**In re Richard W. & Corine B. LAZARO, Debtors.**

**Bankruptcy No. 91–30319–C.**

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

June 5, 1991.

---

E.P. Kirk, El Paso, Tex., for debtors.

Joe Pitzinger, Dept. of Justice, Tax Div., Dallas, Tex., for IRS.

### DECISION AND ORDER ON MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the Motion of the United States of America (Internal Revenue Service) to Dismiss, or Alternatively, Motion to Transfer Case and the Response thereto of the Debtors. Upon consideration of the evidence and the arguments of the parties, the court enters this its decision and order thereon.

This bankruptcy case was filed in El Paso, Texas (in the Western District of Texas) on March 11, 1991. The Debtors reside in Las Cruces, New Mexico, approximately thirty miles north of El Paso. Las Cruces is in the District of New Mexico. On April 11, 1991, the IRS (a creditor in this case) filed this motion, alleging that venue is improper in the Western District of Texas and urging that, under Bankruptcy Rule 1014(a)(2), the bankruptcy court must exercise one of only two options: either transfer the case to the District of New Mexico or dismiss the case. R.Bankr.P. 1014(a)(2).

The evidence presented satisfies the Court that, under the standards of 28 U.S.C. § 1408, venue is not proper in the Western District of Texas. Richard Wayne Lazaro is a surgeon with a thriving prac-

tice and ambulatory surgery center in Las Cruces. His wife assists in the practice. Their home is there, too, as are their assets. While Dr. Lazaro draws patients from west Texas, he also draws them from Arizona. About eighty-five percent of his receivables come from government assistance payments originating in Oklahoma. The only real connection the Debtors have with El Paso is that both their attorney and their accountant are in El Paso, and the accountant keeps the business's books there. The Debtors' computer records in Las Cruces can generate the current status of accounts receivable, and the business decisions regarding what kind of services to perform, how much to charge, who should be hired and fired, and so forth are made by Dr. and Mrs. Lazaro from their operation in Las Cruces.

The Debtors argue that the court has the right to retain the case even if venue is improper, despite the provisions of Bankruptcy Rule 1014. Only if the Debtors prevail on their argument about a bankruptcy court's power to retain a case filed in an improper venue may they avoid the transfer or dismissal of this case pursuant to Bankruptcy Rule 1014(a)(2).[1] The court took the matter under advisement to consider the merits of this last argument. We turn directly to this argument.

There are compelling practical reasons which support retention in this case and which motivate the debtors. Las Cruces, though in New Mexico, essentially operates as a distant suburb of El Paso, the closest major city. The Bankruptcy Court for the District of New Mexico only sits in Las Cruces three or four times a year, requiring parties who need more frequent hearings to travel to Albuquerque, some 225 miles to the north. So inconvenient is Las Cruces for bankruptcy matters that an estimated 10% of the bankruptcy filings in El Paso, Texas are in fact Las Cruces residents. The bankruptcy bar in Las Cruces is also quite small, and El Paso lawyers frequently serve that market (though they

file in El Paso rather than Las Cruces). Practicalities alone, however, are not enough to justify our retention of this case if the IRS is correct in its assertion that the law does not permit retention when venue is improper.

The IRS relies on Bankruptcy Rule 1014(a)(2), which provides:

> (2) *Cases Filed in Improper District.* If a petition is filed in an improper district, on timely motion of a party in interest and after hearing on notice to the petitioners and other entities as directed by the court, the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

R.Bankr.P. 1014(a)(2). The present rule is part of wholesale amendments made to the Bankruptcy Rules promulgated in response to the changes to Title 11 and Title 28 made by the Bankruptcy Amendments and Federal Judges Act of 1984. According to the Advisory Committee Notes to the 1987 Amendments,

> [b]oth paragraphs 1 and 2 of subdivision (a) are amended to conform to the standard for transfer in 28 U.S.C. § 1412. Formerly, 28 U.S.C. § 1477 authorized a court either to transfer or retain a case which had been commenced in a district where venue was improper. However, 28 U.S.C. § 1412, which supersedes 28 U.S.C. § 1477, authorizes only the transfer of a case. The rule is amended to delete the reference to retention of a case commenced in the improper district. Dismissal of a case commenced in the improper district as authorized by 28 U.S.C. § 1406 has been added to the rule. If a timely motion to dismiss for improper venue is not filed, the right to object to venue is waived.

This advisory note betrays a significant problem with Bankruptcy Rule 1014(a)(2). The rule goes considerably beyond the language of the statute which it was designed

---

**1.** Whether to dismiss, transfer or retain an improperly venued bankruptcy suit is an issue for the courts to decide, however, deference should be given to the overriding congressional concerns and measures should be taken to correct the current omission by amendatory legislation. 1 *Collier on Bankruptcy,* ¶ 3.02[4][d][ii] (15th ed. 1988).

to implement. *See* 28 U.S.C. § 1412. Indeed, it engrafts onto Section 1412 the remedial provisions of Section 1406 of Title 28, even though the structure of the various venue provisions reflects an apparent congressional intent to devise *special* rules for venue in bankruptcy cases distinct from the general venue rules applied to general civil litigation filed in federal courts.

■ Section 1412 of Title 28 states:

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412. While the advisory committee note to this rule says that this statute *"authorizes* only the transfer of a case" (emphasis added), the statute itself says that the court *"may* transfer a case . . . in the interest of justice or for the convenience of the parties." Contrary to the advisory committee's solemnic pronouncement, the statute *permits* rather than authorizes.[2] This permissive language allows a district court *not* to transfer a case if the interest of justice or the convenience of the parties so dictates. *See In re Boeckman*, 54 B.R. 110, 111 (Bankr. D.S.D.1985).

■ A facial comparative reading of the rule with the statute demonstrates that the former is inconsistent with the latter. The rule appears to in effect *amend* the statute, even though the enabling statute

which permits the Judicial Conference to promulgate the Bankruptcy Rules expressly prohibits that body from issuing rules which are inconsistent with the statute. 28 U.S.C. § 2075.[3]

It may be that the rule is in fact *not* inconsistent with the statute if the IRS (and the advisory committee) are correct in their belief that Section 1412, read in *pari materia* with Section 1477 (the predecessor statute), indeed now precludes retention of a case filed in an improper venue. *See In re Cunningham*, No. 88–4045, slip op. (D.S.D.1988) [1988 WL 148642]. To evaluate this argument, we must look at the prior enactments.

Section 1475, entitled "change of venue," read as follows:

A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

28 U.S.C. § 1475 (repealed). This statute, rather than Section 1477, appears to be the true predecessor of current Section 1412. Section 1477, on the other hand, appears to have been the bankruptcy corollary to Section 1406, which applies to general civil litigation in federal court. Both Sections 1477 and 1406 were entitled "cure or waiver of defects." Before it was repealed, Section 1477 provided:

---

**2.** Some commentators speculate that the use of the disjunctive "or" in Section 1412 rather than the conjunctive "and" used in former Section 1477 implies that a somewhat less restrictive standard may be applied under Section 1412. *In re Boeckman*, 54 Bankr. 110, 111 (Bankr.D.S. D.1985) (citing 1 *Collier on Bankruptcy*, ¶ 3.02 (15th ed. rev. 1985)).

**3.** Section 2075 was amended in 1978 precisely to put a stop to what had become standard operating procedure under the Bankruptcy Act. The most significant "amendments" to the Bankruptcy Act throughout the 1960's and early 1970's were made not by Congress but by the Judicial Conference by the adoption of various bankruptcy rules. Indeed, the automatic stay was first enacted not as a statute but as a rule. The evils of such a system go far beyond violating the separation of powers embedded in our Constitution, serious though that evil alone is.

Rules are promulgated by judicial officers who do not, by their office, represent the will of the people. Instead, they seek guidance from professionals in the area, and lawyers active in the National Bankruptcy Conference and other professional groups were more than happy to "help." Thus practitioners did more than simply practice under the law. They actually took an active role in writing it. Small wonder that a principle motivation of Congress in overhauling the bankruptcy laws was to break down the pervasive effect of the "bankruptcy ring." The amendment to Section 2075, by reserving solely to Congress the power to amend congressional enactments involving bankruptcy, put a firm end to prior practice. It may be that certain members of the Judicial Conference in 1986 were as yet unaware of this fundamental policy shift when they were working on rules to implement the BAFJA amendments.

(a) The bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong ... district may, in the interest of justice and for the convenience of the parties, retain such case or proceeding, or may transfer, under Section 1475 of this title, such case or proceeding to any other district ...

28 U.S.C. § 1477(a) (repealed). Section 1406, of course, was not repealed (or even affected) by the BAFJA amendments of 1984, as it applies to all general civil litigation filed in federal district court. As it has for over 30 years, Section 1406 reads as follows:

(a) The district court of a district in which is filed a case laying venue in the wrong ... district shall dismiss, or if it be in the interest of justice, transfer such case to any district ... in which it could have been brought.

28 U.S.C. § 1406(a).

■ With the 1984 BAFJA amendments a "change of venue" provision was preserved for Title 11 cases, while a "cure or waiver of defects" provision for such cases was deleted. By this did Congress intend for Section 1406 to now govern all federal cases *including* bankruptcy cases, or did Congress intend to have the "change of venue" section control all venue matters, regardless whether venue was proper or improper?

Section 1406(a) was itself revised in 1960 to *add* the language permitting transfer of a case where original venue was improper, to ameliorate the harsh result under prior law which dictated that a case *had* to be *dismissed* if venue was improper. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369 (2d Cir.1966). The trend in the law is thus *away* from a harsh, rigid rule and toward a more practical, flexible alternative. The advisory committee's note to current Bankruptcy Rule 1014(a), by contrast, seems to backpeddle toward rigidity and inflexibility, concluding as it does that Section 1406 *must* apply to bankruptcy cases, when the deletion of Section 1477 by the BAFJA amendments could just as easily be inter-

preted as the logical next step in Congress' continuing retreat from rigid rules relating to venue in federal cases.

There is another reason why the drafters of Bankruptcy Rule 1014 appear to have been mistaken in presuming that Section 1406(a) must control in bankruptcy cases (as they did in their drafting of Bankruptcy Rule 1014(a)(2)). The statute which the advisory committee note maintains was the predecessor to Section 1412 (Section 1477) authorized retention or transfer, but also permitted transfer to another district without regard to whether that district *itself* was a proper venue for the case. Section 1406(a), by contrast, permits transfer only to districts which are otherwise proper venues. Section 1412 is more in line with both prior Sections 1477 and 1475 than it is with Section 1406(a), in that it permits transfer to other districts, without regard to whether those districts are themselves proper venues.

The *Boeckman* court concluded that Congress did not intend to eliminate the option of retaining an improperly filed case by deleting the retention language formerly included in Section 1477. *In re Boeckman*, 54 B.R. at 111. "[T]he permissive language used in Section 1412 ... merely says that a district court 'may' transfer a case to another district; it does not say it must transfer the case, nor does it say that if the court determines not to transfer the case, that it must dismiss the case." *Id.* "[T]he wording of the statute indicates that the basis for the transfer should be 'in the interest of justice or for the convenience of the parties.' It seems logical that if a transfer is not in the interest of justice or for the convenience of the parties, the court may also decide not to transfer the case." *Id.*

It is an odd construction indeed to maintain that New Mexico would be free to transfer this case to the Western District of Texas (as the statute clearly authorizes), but that the Western District of Texas is not free to retain the self-same case. In fact, even Bankruptcy Rule 1014 permits transfer "to any other district" without limitation, if transfer is in the interest of

justice or for the convenience of the parties. R.Bankr.P. 1014(a)(2). At the very least, this relative flexibility in both the statute and the rule regarding transfer of cases "to any other district" is entirely inconsistent with the intractable notion that the same court, if it decides *not* to transfer to a district whose venue would be improper, must dismiss rather than keep it in an improper venue. *See In re Boeckman,* 54 B.R. at 111.

It seems especially significant that Congress deleted Section 1477, the bankruptcy counterpart to Section 1406, and preserved only the much more flexible change of venue provisions originally found in Section 1475 and now found in Section 1412. The court in *In re Leonard* persuasively argued:

> There is no legislative history which suggests in any way an intent to make a substantive change in the law. Section 1412 permits a transfer to *any* other district. It would make no sense to permit a transfer to any other district, i.e., one in which venue might be improper, and not permit retention in an improper venue. It would be anomalous to conclude that a debtor is prohibited from staring out in an improper venue when the case could be transferred to an improper venue. I hold, therefore, that if Congress did intend to repeal both § 1475, relating to transfer to *any* other district, and also § 1477, relating to retention in an improper forum, and substitute therefor the new § 1412, the most probable intention of Congress was to streamline the language and not to make a substantive change. Congress may have believed that the power to retain an improperly venued case is implied, without the need for explicit authorization, so long as the district court venue chapter of title 28 contains no provision at all for the dismissal of bankruptcy cases brought in an improper venue, and so long as the transfer of venue provision of that chapter is couched in permissive rather than mandatory language.... Other possibilities exist, of course. Congress may have intended that the new § 1412, granting *district* courts the power to transfer cases, would simply leave unaffected both § 1475 and § 1477, which granted *bankruptcy* courts the power to either retain or transfer cases. If Congress' intent is unclear, then under the general rule of statutory construction as to mutually exclusive statutes passed on, and effective on, the same date, § 1477 would remain unaffected by either provision. *See* 1A Sutherland, *Statutory Construction,* § 23.17 (4th ed. 1972). Therefore, I conclude that this Court continues to have authority to retain this case, even though venue is improper, "in the interest of justice and for the convenience of the parties."

*In re Leonard,* 55 B.R. 106, 109–10 (1985); *see also Baltimore Food Systems, Inc.,* 71 B.R. 795, 804 (Bankr.D.S.C.1986); *accord, In re Boeckman,* 54 B.R. at 111.

Congress seems to have recognized that venue considerations in bankruptcy cases are decidedly different from venue issues in general civil litigation (else why enact special venue provisions for bankruptcy cases at all?), and that the hallmark for venue issues in Title 11 cases should be maximum flexibility, leaving to the courts the ability to move or not move bankruptcy cases ("[t]he district court *may* transfer ..."), depending, in the words of the statute, on "the interest of justice and the convenience of the parties." 28 U.S.C. § 1412. Certainly this emphasis on broader, equitable considerations in bankruptcy cases is reflected in other procedural statutes as well. For example, removal in federal civil litigation is closely circumscribed, but removal in bankruptcy cases is broad, automatic, and governed by principles of equity. *Compare* 28 U.S.C. § 1441 *with* 28 U.S.C. § 1452.

■ Interestingly, the language of Section 1412 itself all but mandates that retention be a legitimate alternative regardless whether venue is proper or not. The only statute directly relating to "change of venue" in bankruptcy cases found in Title 28 facially applies to *any* request for a change of venue, regardless of the reason and regardless of who asks for the change. Therefore, even requests for change of

venue made by creditors who maintain that change is appropriate because venue was improper are nonetheless governed by Section 1412. Section 1412 itself then directs courts considering *transfer* to first consider the interest of justice and the convenience of the parties. Presumably, if the interest of justice and the convenience of the parties do not warrant transferring the case, then, under the statute, the court would be abusing its discretion if it *did* transfer the case, regardless whether venue is improper in the first instance. Thus, retention must be the logical consequence of a court's declining to transfer venue.[4]

Nor does this interpretation invite abuse by debtors, though even if it did, it remains for Congress to fix the problem. It would seem that courts evaluating "the interest of justice" are well-advised to consider whether the debtor has been engaging in forum-shopping, and to transfer the case if that is what they conclude is going on. Section 1412 gives the court ample authority therefore to discourage abuse. By the same token, the flexibility built into Section 1412 prevents bankruptcy's equitable proceedings from being held hostage to inequitable procedural rules only marginally related to the realities of the bankruptcy process. Thus, in parts of the country such as far west Texas and southern New Mexico, parties already financially strapped need not be deprived of relief by virtue of an intractable and unreasonable bankruptcy venue rule which in operation permits only those who can afford to travel the right to bankruptcy relief. This is especially important to consumer debtors, who often find it difficult enough to even come up with the filing fee, much less travel hundreds of miles (no doubt having to take one or even two days off work, with no assurance that the job will be there for them when they get back from the hearing).

▆▆ Several bankruptcy courts have concluded that the 1984 BAFJA amendments did not strip the bankruptcy court of the authority to retain a case filed in the improper venue in the interest of justice and for the convenience of the parties. *In re United States Aviex Co., Inc.*, 96 B.R. 874, 882 (N.D.Ind.1989); *In re Baltimore Food Systems, Inc.*, 71 B.R. at 804; *In re Leonard*, 55 B.R. at 110; *In re Boeckman*, 54 B.R. at 111; *In re Butcher*, 46 B.R. 109, 112 (Bankr.N.D.Ga.1985); *but see In re Pick*, 95 B.R. 712, 715–16 (Bankr.D.S.D. 1989); *In re Cunningham*, No. 88–4045, slip op. at 7 (D.S.D. Sept. 30, 1988) [1988 WL 148642]; *In re Townsend*, 84 B.R. 764, 766–67 (Bankr.N.D.Fla.1988); *In re Greiner*, 45 B.R. 715, 716 (Bankr.D.N.D.1985). *Collier* also suggests that the authority to dismiss a case for improper venue does not appear to have been conferred by Section 1412, and should not be read in. 1 *Collier on Bankruptcy*, ¶ 3.02[4][d][ii] (15th ed. 1991).[5] Lacking such authority, the only alternative to transfer would, under *Collier*, appear to be retention. Furthermore,

---

**4.** This analysis also demonstrates that Bankruptcy Rule 1014(a)(2) does *not* implement Section 1412, contrary to the advisory committee note. Instead, the rule appears to implement Section 1406(a), and in the process presumes that Congress indeed intended Section 1406 to apply to bankruptcy cases. In so doing, the drafters of the rule have presumed too much, as it is the role of the courts to make this sort of determination (or of Congress to clarify, if it deems necessary).

**5.** Comments the treatise,

Section 1412 merely says that a district court "may" transfer a case to another district. It does not say it must transfer the case, nor does it say that if it determines not to transfer the case, it must dismiss the case. Superseded section 1477(a) provided that the bankrupt-

cy court in which a case had been improperly filed could retain or transfer the case. It was thought by most courts that the option to dismiss a case was not present. By like construction, it would seem that under Section 1412, the court may transfer, but not dismiss a case. The option to retain is open to question; the statute is silent. The sanction of dismissal is permitted when Congress says it is permitted, as Congress did in 28 U.S.C. § 1406(a). Such a construction is to be commended because of the significant impact that dismissing a case has upon third parties. Dismissal may result in preference recoveries being lost. It may result in a valuable asset being lost to foreclosure. These and other consequences should lead to an interpretation of section 1412 which precludes the power to dismiss.

there does not appear to be any indication in the scant legislative history to the 1984 amendments which would dictate a result contrary to the court's authority to retain the case. *See generally, In re United States Aviex Co., Inc.*, 96 B.R. 874; *accord, In re Boeckman*, 54 B.R. at 111. Therefore, this court joins these decisions and *Collier* in concluding that Section 1412 permits retention of cases filed in an improper venue.[6]

█ Concluding that the rule is inconsistent with the statute, and further concluding that the statute itself does not prohibit retention of a case in the interest of justice and for the convenience of the parties, the court finds that this case should be retained in this venue.[7] Transfer to Las Cruces would *not* be convenient for any party (not even the IRS, whose officer in Las Cruces would also have to drive the 225 miles to Albuquerque for regular hearings), nor would it serve the interests of justice, given that El Paso is a mere 30 miles away from Las Cruces, cash collateral and lease renewal issues have already been resolved by agreed orders in this court, counsel for the debtor is a local El Paso attorney, the cost and time of travel to Albuquerque would impose an unnecessary administrative burden on the estate, making it that much more difficult for the Debtors to apply their efforts to working their way out of this bankruptcy, and creditors are spread nationwide and can get to El Paso more easily than they can get to Las Cruces.

Therefore, the Court concludes that venue is improper in the Western District of Texas, however, in the interest of justice and for the convenience of the parties, venue will be retained in the El Paso Division of the Western District of Texas. The IRS's Motion to Dismiss or Transfer is DENIED.

So ORDERED.

---

*Id.* at pages 3–159, 3–160.

6. A few other details should be addressed in the interest of completeness. The current statute speaks in terms of the district court, departing from the predecessor statute's reference to the bankruptcy court. This change was made to conform to Sections 1334 and 157 of Title 28. Section 1334 places original jurisdiction of bankruptcy cases in the district court. Section 157 permits referral of these cases to bankruptcy courts by a general order of reference. Section 1412 operates in precisely the same way as does Section 1452, presuming that, when the bankruptcy courts act, they do so for the benefit and in the name of the district courts. Whatever the district courts would otherwise do under Section 1412, therefore, the bankruptcy courts do by virtue of the general order of reference pursuant to Section 157(a). There is no need to read any more into the reference to "the district court" in Section 1412 than this.

The retention of venue by the district (or bankruptcy) court does not raise jurisdictional questions either. Firstly, jurisdiction is governed by Section 1334 alone. Secondly, even Section 1406 (the relatively strict provision upon which Bankruptcy Rule 1014(a) is currently premised) expressly advises that improper venue is a waivable defect. 28 U.S.C. § 1406(b). Subject matter jurisdiction, by contrast, can never be waived.

7. Were this Court to find the rule valid, the Court would not dismiss this case, as to do so would not be in the interest of justice or the convenience of the parties per the language of the rule. R.Bankr.P. 1014(a)(2). The IRS would re-institute its levy on the doctor's practice, putting him out of business and eliminating any chance of his repaying other creditors' claims, totalling nearly $1 million. Assuming the validity of the rule, the Court would transfer this case to the District of New Mexico.